First case this afternoon is case number 4-16-0112, People v. Emmanuel Choundard. Is that how it's pronounced? Yes, Your Honor. Thank you. Appearing for the appellant is Attorney Zachary Rosen and for the appellee is Attorney James Majors. Good afternoon, gentlemen. Mr. Rosen, are you ready to pursue? I am. You may. Good afternoon, Your Honors, and may it please the Court, Counsel. My name is Zachary Rosen from the Office of the State Appellate Defender, and I represent Mr. Emmanuel Choundard, the appellant. A prosecutor's duty is to seek justice, not to win cases. Unfortunately, for Mr. Choundard's case, his prosecutor was more focused on the latter objective than the former. In Mr. Choundard's case, the prosecutor repeatedly attempted to admit evidence that was ruled inadmissible, irrelevant, and prejudicial by the judge on numerous occasions. This constitutes, or I argue it should constitute, prosecutorial misconduct, and that's reversible error when it's impossible to conclude whether or not the verdict was affected by these prosecutorial actions. Now, in this case, it's the repeated attempts of the prosecutor to admit this evidence after the court had already ruled and had ordered the state to stop going in this direction, stop trying to admit this evidence. And so this court must consider whether the jury could have reached a contrary verdict had the improper remarks not been made, or if this court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, then a new trial should be granted. And that's what Mr. Choundard is asking. Now, he raises his claim under second-pronged plain error because the issue is forfeited. Though it was objected to several times at trial, it does not appear again in a post-trial motion. However, it does affect Mr. Choundard's constitutional rights, his rights to a fair trial, and those were violated in his case. The Illinois Supreme Court grants you authority to rule on this case under second-pronged plain error. They found that prosecutorial misconduct does qualify as a structural defect, and that it can affect the framework within which the trial proceeds. And I argue that that's what happened here in this case. The information was, the objectionable evidence was addressed in a motion in limine. And what I'm talking about is the presence of two women found in an adjacent hotel room. This evidence wasn't discovered by the police until after Mr. Choundard was arrested for obstructing justice. So Mr. Choundard was arrested. He was pulled out of the hotel room. That's room number 318. The police enter. They search the room. They also search a connecting hotel room by walking through a door, and that's where they find women. And these women really have nothing to do with obstructing justice. The presence of them, their existence, doesn't assist the state in proving any of the elements. And by repeatedly attempting to admit this evidence, the state prejudiced or biased the jury against Mr. Choundard. Along those lines, when you say repeatedly attempt, and I'm not going to identify where in the course of this I'm drawing this example. It's during witness testimony. If the trial court overrules the defense objection and the question is asked and then it's asked subsequent to that, can the defense claim prosecutorial misconduct in light of the trial court's ruling? I just want to make sure I understand your question, Your Honor. Did you say that after the first objection, the court overrules the objection? Correct. Yes. Well, I think that this issue raises to the court today because the court found the information inadmissible and sustained the objection. Well, there were various places in your argument, in your brief, where you claim prosecutorial misconduct based on the prosecutor's questions. But these were questions which the trial court allowed. The objection was overruled. And so I'm just honing in on those examples right now. Can it ever be prosecutorial misconduct in light of a trial court's overruling of the objection? Well, Your Honor, under my reading of the evidence, I don't think that Mr. Chouinard has a claim here if the trial court did not sustain the objections, at least the first time. So just for point of reference through these arguments here, you're only identifying those questions to which the defense objection was sustained. Well, I will say yes, but a yes with a but after it. And that's because when we consider prosecutorial misconduct, we should consider it cumulatively. And so while the State references women in opening statement, and there's no ruling from the court yet, there's no objection. Well, there had been a motion in Lemonade, and the court had allowed that. So how could it be misconduct for the prosecutor to discuss an opening statement that which the trial court had already given a stamp of approval on? Well, perhaps that instance in and of itself is not a violation, would not give rise to this claim if that were the only issue that I were raising. But the fact is that once the first witness took the stand for the State, and this information was attempted to be admitted by the State with the first witness, the defense objected, the court sustained, and explained its objection. And those sustained objections continued throughout the entire trial up until the point that Mr. Chouinard was on the stand in cross-examination. That's the instance when the court flipped and decided to, instead of sustaining the objections that it had sustained throughout the entire trial, decided to instead overrule and then admit that information. Now, the decision of the court to change its course does not remedy the violations that occurred throughout the entire trial. And that's because the issue here is not whether the information is relevant or irrelevant, although I think that's tangentially related. The issue is whether or not the jury was biased when it sat there and watched the State try to get this information in over and over through the two witnesses, the officers, and then finally got it in when Mr. Chouinard was on the stand. And I think that that biased the jury because the entire trial, the jury is saying, what is this other evidence that the State wants to get in? What's going on in the other room? What's going on with the other women? And so they think it's a piece of smoking gun evidence, when in reality that evidence doesn't go to prove any of the elements necessary to convict Mr. Chouinard of obstruction of justice. How do you support your position that the jury felt that that was a smoking gun piece of evidence in this deliberation? Well, I certainly don't know what the jury was thinking. I wasn't in the deliberation room, and we can only conjecture what they talked about. But the fact that the State tried so aggressively to admit the information throughout the entire trial would have cued anyone that this piece of information is important, or at least that the State thought it was important. So when the State finally got it in, that was a big win for the State. And I think that any juror member would have picked up on that and that it would have been impossible for them to not consider it. I didn't see in the brief that you were claiming the trial court committed error in its eliminating ruling or in overruling the defense objection, allowing in this testimony during defendant's examination. To be clear, you are not claiming the trial court erred in its rulings there. Is that correct? That is correct, Your Honor. I am not arguing that as a standalone issue. While I do disagree with the court switching its course and deciding to overrule the objection and admit the evidence, I believe that the court was wrong in that instance. The issue I am raising is only prosecutorial misconduct and so should only focus on the conduct of the State attorney continuing to try to admit this evidence time and time again after sustained objections. And I think the most egregious example is under the State's witness, Officer Elizabeth Alfonso. And this was after the first time the State attempted to admit it with the prior officer, Mr. Hurley. The court sustained the objection and explained to the State why this information was irrelevant, prejudicial, and a sidebar. So then Officer Elizabeth Alfonso takes a stand. The State begins to ask about the connecting rooms and the court steps in. The court says, where are we going here? Is it the same place as before? And the State, I think brazenly, says, not quite, Your Honor. And I say brazen because then the State goes and talks about the very same evidence that was just sustained and was found inadmissible by the court. Wasn't the next question, my notes, something to the effect of what happened next? Isn't that the next line of inquiry from the prosecutor? Yes, Your Honor. That is correct. And so perhaps the questioning of the State is not directly targeted at eliciting this information. Surely the State spoke with the officer and discussed what they would testify about. And, you know, I don't think we need to determine why the prosecutor continued to ask these questions. Well, if you would, just stop there. You're highlighting this part of Officer Alonzo's examination and saying that this was especially bad, that this was very representative of prosecutorial misconduct. Specifically, what was it that constituted misconduct during this examination? Well, I think that the prosecutor didn't ask the question in a way that would limit the officer's answer or didn't stop the officer from continuing his or her narrative recollection of what occurred that eventually went into the adjoining room and the presence of the women. Was the officer privy to the trial court's ruling? You know, Your Honor, I'm not sure whether or not the witnesses were quarantined, whether they heard all the discussions or the objections that occurred. I know that the first admonishment from the court occurred at a sidebar, so no one would have heard that. The second time it occurred was at the close of State's evidence, when the court still at that point thought the information was inadmissible and prejudicial. Judge Kavanaugh identified the subsequent question. And, in fact, the question is what happened next in Room 318, specifically identifying the room which the defense wanted the examination confined to. So what's wrong with that question? Well, it's not that I'm pointing to that specific question as the only instance where there is error. I think I've explained to the best of my ability why that question could have been phrased differently to limit the officer's answer. The objection was objection, Your Honor, 318. She's already testified that it was clear. So the defense lawyer is objecting because apparently the answer was getting into what was happening in 317. So the prosecutor asked what happened next in Room 318. I'm trying to identify what it was that was objectionable about that line of inquiry. I think that it was designed to elicit information that the court had already ordered the State to stay away from. And this isn't the only instance. And so I don't want Your Honors to look at just that one example and say, well, because the prosecutor's question there wasn't directly targeted at 317 or about the presence of the women, that Mr. Chouinard should lose. I think that this court should consider the misconduct cumulatively and should look throughout the entire trial. The first witness, the second witness, the fact that after the State closed, the court explained its ruling and the State chose to ask about the adjoining room when Mr. Chouinard was on the stand for cross-examination. I'll just point out again, we want to make sure that we're on the same page here. The State's comments during opening statement followed the trial court's allowance of the type of statement that the prosecutor engaged in through its eliminating order. There were objections that were overruled to which the witnesses provided answers. Following the defendant's cross-examination, or during the defendant's cross-examination, the court overruled defense objection. That was the last evidentiary ruling preceding the closing arguments during which the prosecutor commented on Room 317. Those instances where the prosecutor either provided comments or asked questions can't constitute misconduct given the trial court's rulings. Are you in agreement with that? No, Your Honor, I'm not. I think we have to look at the entire trial cumulatively and not only look at that one instance because on its face, the State's question is innocent. What happened next? But the State should have known where the officer was going and should have known that where the officer was going, what the officer was about to describe, was exactly what the court just said to keep out. So when the court asked, where are we going here, the prosecutor should have known that I'm going down the same road. I'm trying to admit the same evidence that was just found inadmissible. Except that the prosecutor took the additional step qualifying the question to Room 318. That's true. In that instance, the prosecutor did. But I don't think the prosecutor did that when Mr. Chouinard was on the stand, and I don't think that's what happened when Officer Hurley was on the stand. And in addition to attempting to admit the evidence about the presence of the women, the prosecutor also references other objectionable evidence, other evidence that I think would bias the jury against Mr. Chouinard, prevent it from having a fair trial. Like when it talked about Mr. Chouinard, that his behavior that day could have resulted in him being tased, could have resulted in him being arrested in a more aggressive manner. And this is just one other example that I think that the court can consider cumulatively when weighing whether or not prosecutorial misconduct occurred here. And remember, it has really nothing to do with whether or not the information was relevant or irrelevant. It has to do with whether or not this court can conclude, did the jury rely on this information? And I think that the fact that the information about the women, about the other room, that it comes in repeatedly, not just this one instance, but on multiple witnesses throughout the entire trial after objections were sustained, is what leads me to the fact that the jury would be biased by this type of information because they were teased with it throughout the entire trial. They were told in opening that I'm going to talk with you about this information that doesn't seem like it has anything to do with obstructing justice, but what it will do is disparage the character of Mr. Chouinard. And I think that was the state's goal by constantly trying to admit this information, was to show, you know, Mr. Chouinard's not your average person. He's not a mechanic. He doesn't work in an office. He works in a rather interesting industry, the adult entertainment industry. That was some of the state's very first questions about what he did. So when the jury hears that, adult entertainment industry, women in another room, hiding in closets, that one of them was underage, I don't see how this information couldn't bias the jury against Mr. Chouinard. Let me ask you a question, though. Isn't this undercut by the court's later ruling to let it in? I understand. Not just what Justice Harris has suggested. The court is permitting it. Maybe the court should have cut it off earlier and not permitted it. I don't know. But part of couldn't the court have concluded that, one, your denial that everything was, you know, nobody around, coupled with the jury might be curious as to why the officers persisted. Well, the officers persisted because I assume part of it would be the voices from the room or the voice from the room was talking to somebody. If there's nobody else in the room and you say, I'm going to break your neck or I think I'm going to slap you, wouldn't the jury begin to think this was all some sort of a pretext? They just wanted to get this guy, and there weren't any other people in there. There wasn't anybody that he was threatening, that it was a bogus domestic violence call. Yes. Yes, absolutely. The jury would think that. I think they very much would, and that's why the state wanted this information in so badly. But the voices that were heard were heard during the emergency phone call. In fact, what happened when the police were there is that they didn't see anybody. They didn't hear anybody. It was quite quiet, in fact. Well, it would be like a domestic violence call at somebody's home, and the neighbor calls it in because they hear people screaming, and the husband or the wife answers the door and says, there's nobody here, everything's okay, even though they're disheveled and the police may see a table knocked over. There's nobody here. I understand your concern. Did you just leave, or would you go in? No, no, I don't think that the officers should leave in that instance, and I think that they probably could have continued the investigation. But what we're talking about is whether or not the state needed to rely on that evidence, and in doing so, whether or not they biased the jury against Mr. Chouinard. And when the court switched course and went from sustaining to overruling, that decision, that doesn't remedy the error that already occurred. The state had an order against it that said do not talk about this information, and the state violated that order repeatedly. That's the error that is before this court, and that's the error that I think should give Mr. Chouinard a new trial. So this court can look cumulatively, look at all the instances in which this information came in, or perhaps other information that prejudiced the jury against Mr. Chouinard, and this court should feel confident in ruling under pronged to plain error that the error was clear because the state abrogated a ruling from the court, it ignored it, and that the Illinois Supreme Court has said that this type of error is a structural defect. It affects the things that pronged to plain error talks about, the fairness of defendant's trial, the integrity of the judicial process, because the state repeatedly ignored the rulings of the court. And so even though the court flipped at the end and said, all right, you know, I think it is admissible now, I think it is relevant, the error already occurred, and the damage was already done to the jury because they sat there watching the state try to get it in, try to get it in, get sustained objections throughout the entire court, and then finally got it in. And so I think that this court can't determine whether or not the jury definitively relied on it because that's the standard. The only way that you can deny Mr. Chouinard's new trial, or I think one of the ways, is finding that the information there was admissible and that the jury did not rely on it. Because if there's any doubt that they did rely on it, then I think Mr. Chouinard deserves a new trial because the prosecutor ignored the court's ruling. I see I'm out of time, and so I ask for a new trial, and I'm happy to address any other questions on rebuttal. Thank you, Your Honors. Thank you. Mr. Majors? May it please the court, counsel, I always try to simplify things and be brief as possible. It seems to me that this argument is underpinned by three falsehoods. One, that these girls were underage. They were not. The age of consent in Illinois is 17. One woman was 17. One woman was 18. Two, that this leads to something salacious, and I couldn't find salacious in blacks, but in other dictionaries it's sexually stimulating body, lascivious. There's nothing in the record like that. There's nothing that says there's anything funny going on, anything salacious going on. Well, defense is not challenging the evidentiary rulings here, so this is simply as to prosecutorial misconduct. Well, as you pointed out, Your Honor, the motion to eliminate was granted. The state was supposed to allow it to go into this to show why the officers did what they did. I think, if you read the record like I did, that judges started sustaining objections because they started referring to this other room, 317, before it came out into evidence that they were connected, that it was a suite. That's the word used by one of the witnesses. Well, correct me if I'm wrong, and it wasn't the prosecutor that inquired about room 317, but it was an officer that volunteered. I think that's correct, yes. The third falsehood, I think, is their statement that anything after an arrest is irrelevant, and they cite the People v. Johnson, page 71. Well, maybe someone can educate me, but I don't see anything on page 71 of People v. Johnson that says any evidence after an arrest is irrelevant automatically. I don't see it there. Maybe somebody smarter than me can see it there, but I don't see it there. As to forfeiture, whether you talk about relevancy or prosecutorial misconduct, the post-trial motion doesn't say anything about that. It talks about the Fourth Amendment. Without this evidence, the officers' actions are inexplicable, and I've cited the well-known case out of this court of People v. Johnson that involved a man and wife with the last name of Knapp who were shot in the middle of a gang war because someone thought they were in the apartment of an opposing gang member. And Justice Steigman said if you didn't allow all this other evidence in, it would be completely inexplicable. It would just be the defendant came in and shot the Knapps. It wouldn't make any sense to anybody. So this type of evidence, first of all, it isn't misconduct. It isn't criminal. It's just two women in an adjoining room. The salaciousness comes from my opponent. That type of evidence is admissible to explain the surrounding circumstances. It's close to the continuing narrative rule, which some courts call the coherent narrative rule, to explain why the officers are there, why they did what they did. And it's also relevant to show defendants' motive. One of these young women, again, they're not underage as counsel states, had a warrant outstanding from Macon County, which wasn't served. Defense counsel made that clear. The women weren't arrested. He may have been trying to protect them by making a lot of noise to tell them to hide, and that's where they were found hiding. Questions? I don't see any questions. Thank you. Mr. Rosen, rebuttal argument? Yes, Your Honor. Thank you, Your Honors. I'll do my best to address the arguments of the State. I believe that the State talked about some falsehoods that he believes are raised here in this case, and I'd like to address them all briefly. So, firstly, I merely reviewed the evidence as it was presented to the jury at trial, the fact that there were women, that there were two of them, they were in closets, there was a warrant out for one, and one was underage. That was the evidence raised at trial. I'm not sure of the age of consent being 17. I thought it was 18. And so, just as an example, if I'm not sure of that, I imagine that there would be jurors that would be thinking the same thing. And so my apologies if that argument changes at all whatsoever because 17 is the age of consent. Either way, it's not a falsehood. I was just expressing the evidence as it was presented to the jury. Secondly, the State still takes issue with my use of the word salacious. I wasn't making an argument in and of itself about the salacious nature of the evidence, and I don't think it's unreasonable for me to talk about the evidence in that way, particularly the way I highlighted that the State began its cross-examination of Mr. Chouinard by talking about what industry he worked in. I think it's the salacious industry, the adult entertainment business. And once you hear that fact, along with the facts that were sustained as inadmissible throughout trial, I think a juror would put two and two together and start thinking things like that. I think that was reasonable. Counsel, was that issue taken up in Lemonade at all? So the motion in Lemonade directly talked about the phone call, the emergency phone call, and it did reference the presence of the women. And the court decided to withhold its ruling about the women until the evidence was actually I'm talking about the line of work of the defendant. No, it was not. No, sir. And I don't think that there's really an argument to say that that information should be kept out, but it should be considered as part of the cumulative error, as part of the cumulative prejudice cause, because once a juror hears all of those facts, I don't think there's any way to avoid thinking the things that I was suggesting, whether or not the State said them explicitly. I think it was part of the State's attempt to disparage Mr. Chouinard's image, and that's what biased the jury against him. Also, Your Honors, I believe the State, if I understand the argument correctly, is that there wasn't any discussion about the room 317 yet when the officers were on the stand, and that's why the court was sustaining objections. But that type of objection would be foundation, and the court made very clear that it was ruling on relevance grounds. But, again, whether you agree or disagree with the trial court about the relevance of this information does not relate directly to the issue before the court. I think if you find that the information is irrelevant, then the bias that the jury suffered is greater. But even if you find that the information is relevant, it doesn't change the fact that there were standing orders from the judge during that trial that said don't talk about this information that the State ignored. What standing orders? Excuse me, I misspoke. Not standing orders, oral orders from the bench, ruling on the sustained objections and explaining to the court, explaining to the State in a sidebar and at the close of State evidence why it was ruling on irrelevance grounds. And so, you know, Your Honors, this information, whether it be relevant, it could come in. But the State had alternative means to fulfill that purpose served by the contested evidence, the other bad acts. And so I think that the State raises an argument about bad acts evidence, and that's why this information should come in, because we'll learn more about its motive. How are we talking about admissibility? This just wasn't an issue framed by the appellant in this case. I agree, Your Honor. And with that note, I will let you consider this case under the grounds that it's simply prosecutorial misconduct, that you should consider the errors cumulatively, and that you should find solace in ruling under either prong to plain error or under people v. Almond. I think that this court can get to it either way. And unless there are any other questions from Your Honors, Mr. Chouinard asked for a new trial, and I think that you're warranted in granting that in light of the cumulative prosecutorial misconduct that I tried to explain today. Thank you, Your Honors. Thank you, Mr. Rosen. Thank you both. The case will be taken under advisement and a written decision. Congratulations.